UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEANDRE ARNOLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:25-cv-01390-JRO-MG |
| | ) |
| MARTS, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING COMPLAINT AND DIRECTING FURTHER
PROCEEDINGS**

Plaintiff Keandre Arnold is a prisoner currently incarcerated at Pendleton

Correctional Facility ("Pendleton") where the events that gave rise to his

complaint took place. In this civil rights action, Arnold alleges defendants

violated his Eighth Amendment rights.

As an initial matter, Arnold's motion for status regarding the filing fee, dkt.

[8], and motion to reconsider, dkt. [15], are **granted** to the extent that the filing

fee has been resolved in this matter. Dkt. 20. Because the plaintiff is a "prisoner,"

this Court must screen the complaint before service on the defendants. 28 U.S.C.

§ 1915A(a), (c).

**I. SCREENING STANDARD**

When screening a complaint, the Court must dismiss any portion that is

frivolous or malicious, fails to state a claim for relief, or seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To

determine whether the complaint states a claim, the Court applies the same

standard as when addressing a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE COMPLAINT

Arnold's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). Arnold names six individuals as defendants in his complaint: (1) Sgt. Marts, (2) Sgt. Fish, (3) Sgt. Surguy, (4) Dr. Corvetta, (5) Mr. Lawson, and (6) Dr. Lawson. Dkt. 1 at 1.

In his complaint, Arnold alleges that on July 7, 2023, he attempted suicide. *Id.* at 2. Instead of following protocol, Sgts. Marts, Fish, and Surguy, "took matters into their own hands." *Id.* Sgt. Marts attempted to wake up Arnold by dropping his weight and knee into Arnold's neck, choking him. *Id.* When Arnold did not awaken, Sgt. Marts shifted his weight into Arnold's head, smashing it into the concrete. *Id.* Arnold's slowly woke up and one of the Sgts. stated "told ya the 'George Floyd' trick works everytime." *Id.* Then Sgt. Marts used his boot to stand on Arnold's long hair restricting him from moving his head while Sgt. Fish aggressively pulled Arnold's limp body in the opposite direction.

2

*Id.* This ripped Arnold's hair out of his scalp. *Id.* Arnold woke up and yelled for medical. *Id.* Sgts. Marts and Fish dragged Arnold's naked body through the prison, ramming his head into every door on the way. *Id.* Sgts. Marts and Fish failed to report the suicide attempt or seek medical care for Arnold. *Id.*

Once back in his cell, Arnold made his first alleged attempt to hang himself using bed strings. *Id.* Main control witnessed and called for Dr. Gaza and Dr. Corvetta to upgrade Arnold's level of suicide watch, which they did not. *Id.* at 2-3. Later, Arnold tried a second time to use bed strings to hang himself and became semi unconscious from choking himself. *Id.* at 3. Main control summoned Sgt. Surguy who sprayed chemical agent into Arnold's food slot. *Id.* When Arnold woke up, Sgt. Surguy sprayed him again. *Id.* Arnold fell and injured himself during the altercation. *Id.* Sgt. Surguy failed to report the second bed string hanging attempt or seek medical and issued a conduct report instead. *Id.*

After this incident, Dr. Corvetta lifted all suicide prevention orders and allowed Arnold to be free even though he continued to self harm, including stabbing himself in the neck. *Id.* Arnold seeks compensatory and punitive damages as well as injunctive relief.

### III. DISCUSSION OF CLAIMS

As an initial matter, while Arnold named Mr. Lawson as a defendant, he has failed to include any factual allegations against him. "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)

3

(internal quotation omitted). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* Arnold's complaint fails to state any factual allegations against Mr. Lawson. Accordingly, any claim against him is **dismissed.**

Under the Eighth Amendment, inmates cannot prove deliberate indifference without evidence that a prison official actually knew the inmate was in danger of serious injury. *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020); *Santiago v. Walls*, 599 F.3d 749, 756, 758–59 (7th Cir. 2010); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Unlike the seriousness of the injury itself, which is judged objectively, *LaBrec*, 948 F.3d at 841, a prison official's state of mind about the risk of injury to an inmate is "judged subjectively" under the Eighth Amendment. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018); *accord LaBrec*, 948 F.3d at 841. "[T]he prison official must have *actual, and not merely constructive, knowledge* of the risk." *Sinn*, 911 F.3d at 419 (emphasis added) (quoting *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)). That is, he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer,* 511 U.S. at 837). An official will only be liable when he or she disregards that risk by failing to take reasonable measures to stop it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Under this standard, any claim against Dr. Gaza and Dr. Corvetta regarding the allegations pertaining to Arnold's alleged first attempt to hang himself with bed strings is **dismissed.** The Complaint alleges here that both

doctors responded to the call to address Arnold's first hanging attempt and maintained his suicide watch status at that time. Arnold's contention that they should have done more at that time sounds in medical negligence, not deliberate indifference. This is so for several reasons. First, the doctors actually rendered medical care by maintaining Arnold's suicide watch status; this response did not subject Arnold to a danger of serious injury under the subjective standard. Second, Arnold alleged that multiple correctional officers failed to report suicide attempts on several occasions, so those prior suicide attempts (not to mention their details) were unknown to the doctors. Thus, Arnold has not alleged the doctors had actual knowledge that Arnold was at risk of serious injury beyond the information of the incident to which they appropriately responded. Finally, Arnold's suicide attempts had been successfully thwarted under suicide watch status, albeit with excessive force. Arnold makes no allegation that the doctors were aware of the excessive force.

Additionally, any claim against Dr. Gaza is **dismissed** because Arnold did not allege that Dr. Gaza was notified of the second hanging attempt or any other suicide attempt before Dr. Corvetta removed suicide watch entirely.

The claims that **shall proceed** are the following:

- Eighth Amendment excessive force claims against Sgts. Marts, Fish, and Surguy; and

5

- Eighth Amendment deliberate indifference to medical need claims against Sgts. Marts, Fish, and Surguy, and Dr. Corvetta.[1]

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through May 28, 2026,** in which to file a motion to reconsider the screening order.

### IV. CONCLUSION AND SERVICE OF PROCESS

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants in the manner specified by Rule 4(d). Process shall consist of the complaint filed on July 11, 2025, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction and Centurion employees electronically. The **clerk is directed** to terminate Mr. Lawson and Dr. Gaza as defendants on the docket.

Defendant Dr. Corvetta is identified as an employee of Centurion. A copy of this Order and the process documents shall also be served on Centurion electronically. Centurion is **ORDERED** to provide the full name and last known home address of any defendant who does not waive service if they have such information.  This information shall be filed ex parte.

---

[1] The claim proceeding against Dr. Corvetta is related to the removal of all suicide watch precautions only.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 4/29/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

KEANDRE ARNOLD
 Psychiatric Unit
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Electronic Service to IDOC
    Sgt. Marts
    Sgt. Fish
    Sgt. Surguy
    All at Pendleton Correctional Facility

Electronic Service to Centurion
    Dr. Corvetta